UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

TYRONE DORN,
    Plaintiff,

vs.                                      03-1034

KEVIN KELLER, et.al.,
    Defendants.

## ORDER

This cause is before the court for consideration of the defendant's motion for summary judgement [d/e 44] and the plaintiff's motion to amend his complaint.[d/e 47].

## I. BACKGROUND

The plaintiff, a state prisoner, originally filed his complaint pro se on February 18, 2003 against four defendants at the Pontiac Correctional Center including Officers Kevin Keller and Jeffery Baker, Lieutenant Dale Scrogum and Medical Technician Sue Hankins. On February 5, 2004, counsel entered his appearance for the plaintiff. On March 23, 2004, the court found the plaintiff had adequately alleged that:

    1) Defendant Keller and Baker used excessive force against the plaintiff in violation of the Eighth Amendment on April 1, 2001;
    2) the defendants were deliberately indifferent to the plaintiff's serious medical condition

    in violation of the Eighth Amendment on April 1, 2001;
    3) the defendants violated the plaintiff's equal protection rights; and
    4) the defendants violated the state law of negligence and intentional tort.

This case has been delayed on several occasions pursuant to the Soldiers and Sailors Act and due to the illness of plaintiff's counsel. The defendants have now filed a motion for summary judgement for the court's consideration.

## II. FACTS

The following facts are taken from the defendants' motion for summary judgement and the plaintiff's response.

On April 1, 2001, the plaintiff was incarcerated in the North Segregation Unit 5 Gallery at Pontiac Correctional Center. The plaintiff states that Officer Baker and Keller were conducting shift count at approximately 9:30 p.m on this evening. The plaintiff alleges the officers came over to his cell and assaulted him. The plaintiff claims his hand was injured and bleeding after

1

the assault.  Neither Baker nor Keller got medical attention for the plaintiff.

Lieutenant Scrogum arrived at the plaintiff's cell shortly after the attack.  Officer Scrogum called Medical Technician Hankins to the cell to treat the plaintiff.  The parties do not agree about what took place next.  The plaintiff alleges that Hankins took one look at his hand and said he would need stitches.  However, the plaintiff says he was not taken to the medical unit, nor was his hand bandaged.  The plaintiff says he did not receive medical treatment until the next morning.

Hankins medical notes indicate she was called over to the cell house to evaluate the plaintiff's injuries at about 10:15 p.m.  Hankins noted that the plaintiff had a "superficial wound" on his thumb and was "uncooperative, would not let me view his hand or clean wound." (Def. Memo, Ex. D.)

The medical records also show that the plaintiff was allowed an "urgent care visit" the next day at 8:25 a.m.  The plaintiff told staff he had been assaulted by prison staff.  The notes refer to several abrasions and swelling on his left arm, thumb and fingers. (Def. Memo, Ex. D).

### III.  LEGAL STANDARD

The entry of summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56( c).  A "material fact" is one that "might affect the outcome of the suit."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  A dispute is genuine only if a reasonable jury could find for the nonmoving party.  *Id.*

A party moving for summary judgment initially has the burden of showing the absence of any genuine dispute of material fact based on the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 153 (1970);  *Schroeder v. Barth, Inc.,* 969 F.2d 421, 423 (7th Cir. 1992).  A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position.  *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994).  The evidence and all reasonable inferences drawn therefrom are viewed in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255.  Nonetheless, "(s)ummary judgement is not a discretionary remedy.  If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir. 1994).

### IV.  ANALYSIS

A. DEFENDANT BAKER

The defendants first argue that Officer Jeffery Baker did not have any personal involvement in the plaintiff's claims.  The parties agree that the plaintiff's complaint does not name the correct defendant.   In his complaint, the plaintiff claims he was assaulted by Officer

"Jeffery" Baker. The plaintiff had not met the officer before the incident. The officer signed the incident report "J. Baker" with a badge number of 2882. The officer who was involved in the incident is named "John" Baker and his badge number is only one digit different than Officer Jeffery Baker's number. The plaintiff has now filed a motion to amend his complaint to insert the correct defendant's name.

Rule 15(c) of the Federal Rules of Civil Procedure determines whether or not a plaintiff may amend his complaint to add a new defendant once the statute of limitations period has run. Amendments changing the party or the naming of a party "relates back" to the date of the original filing of the complaint if:

> . . . [the claim arose from the same conduct asserted in the original complaint] and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. Fed. R. Civ. Proc. 15(c)(3).

There is no debate between the plaintiff and the defendants that the claims in the amended complaint arose out of the same transaction or occurrence. (Def. Resp., p. 2) The defendants dispute that the plaintiff made a "mistake" within the meaning of Rule 15(c) and the defendants dispute that the correct Officer Baker received notice of the lawsuit within the required time frame.

The plaintiff says he clearly named the wrong defendant as a result of a mistake. The plaintiff states he was given the incorrect first name by an Illinois Department of Corrections employee. The plaintiff says he initially identified the correct officer in his grievance because he referred to "c/o Baker" and provided the correct badge number. The plaintiff has included a copy of his grievance. The plaintiff does provide the correct badge number, but the bulk of the grievance concerns Officer Keller. Therefore, the grievance counselor's response only makes reference to Officer Keller. In his deposition, the plaintiff was asked how he knew the first name of the officer was Jeffery. The plaintiff replied when you file a grievance "and the counselor gives you the name of the particular person." (Plain, Depo. P. 14) The plaintiff does not state which grievance officer or how the officer gave him the incorrect first name.

The defendants state that the failure to name the correct Officer Baker was not a "mistake" within in the meaning of Rule 15(c) of the Federal Rules of Civil Procedure. ) "The commentary to Rule 15(c) clearly indicates that the rule is intended to be a means for correcting the mistakes of plaintiff's suing official bodies in determining which party is the proper defendant." *Donald v. Cook County Sheriff's Department,* 95 F.3d 548 (7th Cir. 1996) In the case before the court, the defendants argue the plaintiff simply lacked knowledge of the true identity of the officer he intended to sue and therefore his amendment should not be allowed. *See Donald,* 95 F.3d at 561. (The Seventh Circuit finds there is a difference between a "mistake" and mere lack of knowledge

3

as to the identity of the proper defendant.)

A district court agreed with this reasoning when a pro-se prisoner made a similar motion to amend in his lawsuit. *Wilson v. Howell*, 2002 WL 31572583 (N.D. Ill. Nov. 19, 2002)(not reported in F. Supp.2d). The plaintiff also claimed the defendant used excessive force and named Officer Gregory Howell, Jr. in his original complaint. The plaintiff continued to pursue this individual even after this defendant filed an answer stating that he did not work at the correctional facility at the time of the incident. It was not until his deposition when plaintiff was unable to identify a picture of Gregory Howell, Jr. that the plaintiff realized he had the wrong individual. The plaintiff then filed a motion to amend stating the correct defendant was Gregory Howell, Sr. His motion was made more than two years after he initially filed the lawsuit.

The court stated that even though the names were similar and the individuals might even be related it was not a mistake, but a lack of knowledge on the plaintiff's part. "This lack of knowledge of the correct defendant, albeit a common problem in prisoner pro se suits, is , unfortunately for this plaintiff, not a reason to allow the relation back to the date of filing of the complaint." *Wilson,* 2002 WL 31572583 at 3.

The court notes that the case before the court is somewhat different. In this case, the plaintiff states that he correctly identified the defendant in his initial grievance. Although the plaintiff did not include a first name, he did include the correct badge number for Officer Baker. If the plaintiff had simply filed his lawsuit against Correctional Officer Baker with this badge number, his case would have proceeded against the correct individual. The plaintiff says he added the incorrect first name after it was provided to him by an Illinois Department of Corrections employee.   Unfortunately, the plaintiff does not state who specifically gave him the wrong name, nor when or how he was given the wrong name. The court need not address this issue, because the plaintiff has not demonstrated that the Correct Officer Baker had knowledge of the lawsuit within the 120 service period. *See* Federal Rule of Civil Procedure 4(m).

The plaintiff filed his complaint and his motion to proceed in forma pauperis on February 18, 2003. Since the plaintiff was relying on the U.S. Marshal's office to effectuate service, the 120-day period was tolled until the date in which in forma pauperis status was granted. *Paulk v. Department of Air Force,* 830 F.2d 79 (7th Cir. 1987). The plaintiff's motion to proceed in forma pauperis was granted on June 20, 2003. Defendant Jeffery Baker was served on July 15, 2003, and the 120-day period expired on October 18, 2003. There is no evidence before the court that the correct individual, Officer John Baker, received notice of the lawsuit during this time frame. The defendants had filed a motion to dismiss the complaint which was based strictly on the sufficiency of the complaint, and the plaintiff had filed several motions for additional time to file a response.   The plaintiff was still proceeding pro se at this point in the litigation.

However, several courts have found that Rule 15(c) does not require that a party receive actual notice of an action. The rule may be satisfied by a showing of constructive notice. The plaintiff argues that the correct Officer Baker did receive constructive notice of the lawsuit because he shared the same attorney as the incorrect Officer Baker. The plaintiff is basing this

4

argument on the fact that the correct Officer Baker appeared for his deposition on October 8, 2004, with counsel from the United States Attorney's Office. However, there is no evidence that the two Officer Bakers had the same counsel during the 120-day period back in 2003, or that the correct Officer Baker would have any need for counsel during this time frame.

Plaintiff's counsel also argues that the "State of Illinois, the Illinois Department of Corrections and the Attorney General, attorneys for the named defendants and John Baker, knew either directly or constructively, that Plaintiff had intended to sue c/o John Baker, not c/o Jeffery Baker and that the naming of Jeffery Baker in the complaint was a misnomer caused by an innocent mistake." (Plain. Memo, p. 2). The problem facing the plaintiff is the court cannot find that Officer John Baker knew or should have known that he was the intended party during the required time frame. *See also Thompson v. Larkins*, 1995 WL 42368 (7th Cir. Feb, 1, 1995)(not reported in 46 F.3d 1134)(mere fact that correct defendant was employee of Department of Corrections, without more, not enough to create the requisite identity of interest).

The court recognizes that the Supreme Court has noted that "the spirt and inclination" of Rule 15(c) favors "decisions on the merits" and rejects "an approach that pleading is a game of skill in which one misstep may be decisive.'" *Schiavone v Fortune*, 477 U.S. 21, 27 (1986); *see also Hill v. Shelander,* 924 F.2d 1370, 1375 (7th Cir. 1991). Nonetheless, the Supreme Court also held that the "linchpin is notice, and notice within the limitations period." *Schiavone*, 477 U.S. at 31. The court cannot find the proper notice in this case.

The court also notes that the length of time it took the plaintiff to file this motion to amend is troubling. The plaintiff admits that the defendants in their answer to the complaint file more than two years ago on April 4, 2004, stated that the Defendant Baker named in the complaint "denies being assigned to the North Segregation Unit [where the assault occurred] at all relevant times." (Plain Memo, p.8) The plaintiff also admits he took the deposition of the correct Officer Baker more than two years ago on October 8, 2004. The correct Officer Baker is identified as a witness. The plaintiff states no reasons for the delay in filing the motion to amend.

Therefore, the motion to amend the complaint to add the correct Officer John Baker is denied. [d/e 47] Officer Jeffery Baker is dismissed for lack of any personal knowledge or involvement in the plaintiff's claims.

B.  EXCESSIVE FORCE

The defendants next argue that Defendants Scrogum and Hankins could not be personally responsible for the excessive force claim or for preventing the assault since they did not arrive on the scene until after the assault took place. The plaintiff agrees and states that he did not intend to make this particular allegation against these two defendants. For clarification of the record, this claim will be dismissed against Defendants Scrogum and Hankins.

C.  DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL CONDITION.

The defendants argue that the plaintiff has failed to establish that Defendants Scrogum or Hankins were deliberately indifferent to his serious medical condition. The plaintiff must pass both an objective and a subjective test in order to establish that the lack of appropriate medical care violated the Eighth Amendment. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991). The plaintiff must first demonstrate that the alleged deprivation was sufficiently serious. *Id*. The plaintiff must also show that the defendants acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "[A] finding of deliberate indifference requires evidence that the official was aware of the risk and consciously disregarded it nonetheless." *Mathis v. Fairman*, 120 F.3d 88, 91 (7th Cir. 1997)(citing *Farmer* at 840-42). Inadequate medical treatment due to negligence or even gross negligence does not support an Eighth Amendment violation. *Shockley v Jones*, 823 F.3d 1068, 1072 (7th Cir. 1987). In addition, inmates are not entitled to a specific type of treatment, or even the best care, only reasonable measures to prevent a substantial risk of serious harm. *Forbes v. Edgar,* 112 F.3d, 262, 267 (7th Cir. 1997).

The defendants argue that Officer Scrogum was a non-medical prison official who called for a medical technician as soon as he saw the plaintiff's injuries. Therefore, once medical personnel was on the scene, there was nothing more that Officer Scrogum could do since he had to rely on the expertise of medical staff. The defendants also argue that Medical Technician Hankins did attempt to treat the plaintiff, but he refused to cooperate. The defendants state the plaintiff apparently was displeased with his treatment, and this does not state a violation of his Eighth Amendment rights.

The plaintiff's version of events is somewhat different. The plaintiff claims when the Medical Technician first looked at his hand, she told him he might need stitches. The plaintiff then claims that Lieutenant Scrogum and the Medical Technician stepped away from his cell to talk. (Dep. P.38) In his grievance, the plaintiff states that he believes the defendants including Defendant Scrogum coached the medical technician about how to handle plaintiff's injuries in an attempt to cover up the attack. (Comp.), The plaintiff says when the medical technician returned to his cell, she began to clean up his hand. (Depo. P 38) The plaintiff reminded her that she said he needed stitches, but the plaintiff says all the medical technician did was clean his hand and tell him to wash it in his sink. The plaintiff also says the prison staff involved were anxious to leave since it was near the end of their shifts.

The court has re-examined the plaintiff's August 28, 2001 grievance attached to his complaint. The plaintiff attached several documents to his complaint including this nine page grievance against the medical technician. The plaintiff states that he "removed his hand from in the palm of this Medical Technicians hand, and would not allow her to clean it any further." (Grievance, p. 3). The plaintiff further states that once he saw "the tactics of the administration he wouldn't allow them to remove him from his cell to go to the Health Care Unit." (Grievance, p. 4)

The court denied the defendants' motion to dismiss based on the statements in the grievance because the entire grievance suggests that the plaintiff feared being escorted to the health care unit by the same individuals involved in the attack and what he believed was an

6

attempt to cover up the incident. "In any event, inconsistent statements by the plaintiff would not doom his claim at the motion to dismiss stage." March 23, 2004 Court Order, p. 3.

While the plaintiff does appear to make some inconsistent statements, the court cannot definitively say the plaintiff refused treatment due to his displeasure with the treatment that was provided.

However, the court notes that neither party addresses whether the delay in receiving medical care violated the plaintiff's constitutional rights. The plaintiff is not claiming that he received no care for his injuries. Both parties agree the plaintiff was seen and treated at the Health Care Unit the next morning approximately ten hours after the alleged attack. Therefore, the question before the court is whether the delay caused by the named defendants violated the plaintiff's constitutional rights.

"[P]roof of deliberate indifference may be found where a prison official intentionally denies or delays access to medical care or intentionally interferes with the treatment once prescribed." *Jones v. Natesha*, 151 F.Supp.2d 938, 945 (N.D. Ill. 2001) *citing* Ford, 2001 WL 456427 at 6. A delay in scheduling an appointment for medical treatment may constitute deliberate indifference. *Jones v. Simek*, 193 F.3d 485, 490-491 (7th Cir. 1999) However, "an inmate who complains that delay in medical treatment rose to constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." *Langston v Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996).

Both parties are to provide well-supported briefs addressing the issue of the delay in medical treatment concerning Defendants Keller, Scrogum and Hankins. The court will also allow the parties to file responses to those briefs.

D.  EQUAL PROTECTION

The defendants claim the plaintiff has failed to demonstrate a violation of his equal protection rights. In response to the initial motion to dismiss the complaint, the plaintiff responded that his equal protection claim was based on a "class of one"– intentional and arbitrary difference in treatment from others similarly situated. The Supreme Court has held that equal protection cases can proceed on a "class of one" theory. *Willowbrook v. Olech*, 120 S.Ct. 1073 (2000). The Seventh Circuit has stated that, "to succeed under such a theory, the [plaintiff] must show that [he was] (1) 'intentionally treated differently from others similarly situated and there is no rational basis for the difference in treatment"; or (2) 'that the government is treating unequally those individuals who are prima facie identical in all relevant respects, and that the cause of the differential treatment is a "totally illegitimate animus toward the plaintiff . . ."  *Nevel v. Village of Schaumburg*, 297 F.3d 673, 681 (7th Cir. 2002)(citations omitted). *See also McDonald v. Village of Winnetka*, 371 F.3d 992, (7th Cir. 2004)(class of one equal protection claim must allege plaintiff intentionally treated differently from similarly situated persons); *Tuffendsam v. Dearborn County Board of Health*, 385 F.3d 1124, 1127 (7th Cir. 2004)(plaintiff must show defendant acted out of reasons of a personal nature unrelated to duties).

The court questioned the viability of such a claim, but allowed the claim to go forward as the defendants had not addressed this theory. The defendants now state that the plaintiff does not constitute a "class of one" because his only allegation is that the defendants treated him differently from other prisoners. (Def. Memo, p. 12) "Plaintiff has alleged unfair treatment, but has not shown that he was discriminated against based on some kind of unjustifiable standard or arbitrary classification." *Id.*

The plaintiff responds that the defendants are simply repeating their position from the motion to dismiss, and since they have offered no new evidence or citations, the court should not change its ruling on an issue of law.

The court disagrees. The court did not rule on this issue as a matter of law at the motion to dismiss stage because the plaintiff's "class of one" theory had not been addressed in any way by the defendants.   The defendants have now addressed the issue. (Def. Memo, p. 6, 12) The plaintiff has failed to demonstrate that he has a viable "class of one" equal protection claim. The motion for summary judgement is granted as to this claim.

D. STATE CLAIM

The defendants also argue that the plaintiff has failed to demonstrate that he has any state law negligence claim. The plaintiff's complaint makes vague reference state law claims of "negligence and intentional tort." (Comp, p. 1)

The defendants argue that this court lacks subject matter jurisdiction over any negligence claims. The Illinois Court of Claims has exclusive jurisdiction over tort claims against the State. 705 ILCS 505/8. Tort actions that arise from a state employee's "breach of a duty that is imposed on him *solely* by virtue of his State employment" must be brought in the Illinois Court of Claims. *Currie v. Lao*, 148 Ill.2d 151, 159, 592 N.E.2d 977, 980 (1992)(emphasis in original). "Conversely, . . . where an employee of the State, although acting within the scope of his employment, is charged with breaching a duty that arose *independently* of his State employment, a suit against him will not be shielded by sovereign immunity." *Id.* (emphasis in original). The test then is not whether the tort arose from intentional or negligent acts, it is whether the tort "arose... [from] a breach of a duty... imposed *solely* by virtue of...State employment." *Currie*, 148 Ill.2d at 159, 592 N.E.2d at 980.

The defendants argue that in this case, the duty the defendants owned the plaintiff arose solely from their status as employees of the Pontiac Correctional Center and the plaintiff's status as an inmate at that institution. The plaintiff again responds that the defendants are simply repeating the same arguments made in their initial motion to dismiss, and since they have not provided any new evidence, the court should not change its ruling on the issue of law.

Again, the court disagrees. In its ruling on the motion to dismiss, the court stated that it was not clear from the plaintiff's complaint what negligence action he was pursing. "The court does not see how the alleged assault can be characterized as negligence." March 23, 2004 Court

Order, p. 3. "[T]he record is not developed enough to determine what those claims are, much less whether they arose from a breach of duty imposed by the State." *Id*.

This case is now more than three years old and the plaintiff has failed to articulate a basis for the negligence claims. The motion for summary judgement on this claim is dismissed. The plaintiff may proceed on his intentional tort claim of assault and battery against Defendant Keller.

V. CONCLUSION

The plaintiff's motion to amend the complaint is denied. [d/e 47]. The motion for summary judgement is granted in part and denied in part as outlined in this order. [d/e 44]. The parties will be given additional time to file briefs on the plaintiff's claim that the defendants were deliberately indifferent to his serious medical condition.

This case has been repeatedly delayed mainly pursuant to the Soldiers and Sailors Act. Most recently, the case was stayed as to Defendant Keller just prior to the close of discovery. The parties stated that they had completed discovery, but had been unable to depose Defendant Keller.
The defendants have informed the court that Defendant Keller has returned from active duty. Therefore, on November 15, 2006, the court granted one last brief extension to the discovery period for the sole purpose of deposing Defendant Keller. The parties were advised that they must complete the deposition on or before December 15, 2006. This case must be resolved and the court will not allow any further continuances.

**IT IS THEREFORE ORDERED that:**

**1) The motion to amend or correct the complaint is denied. [d/e 47]**

**2) The defendants' motion for summary judgement is granted in part and denied in part. [d/e 44] The court will dismiss any equal protection claims, any excessive force claims against Defendants Scrogum and Hankins and any state law negligence claims. The clerk of the court is also directed to dismiss Defendant Jeffery Baker from this lawsuit for lack of any personal knowledge or involvement in the claims. The plaintiff's remaining claims are:**

> **a) Defendant Keller used excessive force against the plaintiff in violation of the Eighth Amendment on April 1, 2001;**
> **b) Defendants Keller, Scrogum and Hankins were deliberately indifferent to the plaintiff's serious medical condition in violation of the Eighth Amendment on April 1, 2001; and**
> **c) Defendant Keller violated state law when he committed the intentional tort of assault and battery**.

**3) The plaintiff and defendants must file a brief with the court addressing the issue of whether the delay in receiving medical care violated the plaintiff's Eighth Amendment rights.   The briefs must be filed on or before December 15, 2006.   No further continuances will be granted.   The parties may file a response to the briefs on or before January 8, 2007.  No continuances will be granted.**

**4) The court will abide by the following scheduling deadlines:**

**a) remaining discovery period for the deposition of Defendant Keller closes on December 15, 2006.**

**b) this cause is set for pretrial conference on February 9, 2007 at 10:30 a.m. by video conferencing.  The plaintiff's counsel will participate from the Thompson Building in Chicago.  <u>The clerk is to issue a writ for the parties participation in the video conference</u>.**

**c) the parties must file their proposed joint pretrial order with the clerk of the court on or before February 7, 2007.**

**d) this cause is set for trial on February 20, 2007 at 9:00 at the Federal Courthouse in Urbana, Illinois.  <u>The clerk is to issue a writ for the plaintiff's personal appearance at trial.</u>**

**The court will not allow any further continuances.**

ENTERED this 21st day of November, 2006.

                                              **s/Harold A. Baker**
                                      _____
                                         HAROLD A. BAKER
                              UNITED STATES DISTRICT JUDGE